Oaeuthers, J.,
delivered tbe opinion of tbe Court.
On tbe 27tb of December, 1854, the defendant, Jefferson, sold to tbe plaintiff, at Courtland, Alabama, two slaves; Lucretia, about 25 years old, and her son, Jordan, about six, for $1150, and executed Ms bill of sale warranting title and soundness.
The negro woman died in a very short time — but a few days after tbe purchase. This action is brought against the defendants upon the ground of deceit and fraudulent concealment of unsoundness known to them at the time.
The second count charges that the defendant James, being the owner of said slaves, and well knowing the said Lucretia to be unsound and worthless, sent her to Alabama by his brother, the said Jefferson, who was insolvent, to be sold, and under this combination and fraudulent contrivance they were sold, and a bill of sale made by the latter in his own name.
It is fully and clearly proved that they were bought by James, who was a physician himself, at a low price, as unsound. This is proved by his vendor, Dr. Burdett, who says they were very ■ delicate; that he purchased them as “ unsound property,” and sold them with a full disclosure of that fact, about the 1st of December, 1854, for $600. The defendant, James, told witness, McMahon, before he bought them, and after, that he knew they were diseased, but that “he could make something on them by patching them up.” Afterwards he told the same witness, and others, that “ he had sent them to Alabama by his brother Jeff., and Jeff, had sold them.” On being asked if he was not afraid they would come on *248 him for damages, he said, “ he was not, that he was not known in the hill of sale, that Jeff, had given it, and he was irresponsible.” He boasted that he had made from five to seven hundred dollars upon the ne-groes.
There was some proof made by defendants, to the effect, that one Bobo was a partner in the purchase from Burdett, and that he sold out his interest to Jeff., and that the latter was not, in fact, insolvent. But this does not vary the case.
Dr. Orunlc is the main actor in the fraudulent contrivance to impose upon some distant purchaser who might be ignorant of the diseased condition of the woman, and for that, he, and his brother whom he engaged to carry out his scheme, are sued. A case for recovery of full damages is made out against them, unless they are protected by some technical rule in their favor.
It is supposed that the principle of Rosson v. Hancock, 3 Sneed, 436, must defeat this action for want of a return, or offer to return the slaves, in a reasonable time. That case recognized and applied the principle, that where there is a warranty made by the defendant, who is attempted to be made liable upon the ground of fraud or deceit in relation to defects which are covered by an express warranty, that it must be shown that the property has been returned, or offered to the vendor, in a reasonable time. That is, if the contract of warranty is abandoned, and a rescission claimed for fraud, and the suit is for that, and not on the contract, the plaintiff must show, as a condition precedent to recovery, that he has proposed to rescind by tendering back the property. Yet, if the unsound slave should *249 die within' the reasonable time, that would excuse the return and remove the. difficulty.
But that is not this case by any means, even if the slave had not died. That rule is expressly confined to cases where there is a contract of warranty against the same defects, upon which the suit may be brought, instead of the fraud, at the election of the plaintiff.
But if redress is sought against a party upon the ground of fraud, who has made no warranty, the difficulty is out of the way, and a tender of the property unnecessary, as a prerequisite. This is a case of that kind. James Crunk has not only failed to sign any bill of sale or written contract, but expressly and avowedly avoided it to escape liability and perpetrate a fraud upon an innocent stranger, for which he thought there would be no redress, because of the insolvency of the agent selected to assume the ownership andSmake title, with covenants.
There is no contract with him, in writing or otherwise, to sue upon, or rescind, but he is sued for fraud and deceit. It is no defence to him, that his brother is included in the action, and has otherwise bound himself. They arc both liable, to be sure, but each is, separately, as well as jointly, responsible for the wrong.
We think his Honor erred in applying the principie of the case of Rosson v. Hancock, if the charge is to be so understood, as we think it was by the jury. But this was with reference to the first count, and properly qualified, by stating that the death of the slave within a reasonable time would excuse the tender. The Court, in that part of the charge which related to the damages, laid down the law correctly, to be, that where the sale *250 was for a gross sum for both slaves, they must ascertain from the circumstances, what amount was allowed for the one proved and known to he unsound, and render their verdict for that alone, with interest. The whole charge, when properly understood, is, perhaps, substantially correct. But the verdict for defendants must have been produced by the closing remark of the Judge upon the request of defendant’s counsel to instruct the jury to the effect that, upon a sale in gross, the plaintiff could not elect to keep the boy, Jordan, and recover for Lucretia, and that a suit could not be maintained for either on the ground of fraud, without a tender of both, or a sufficient excuse as to both. The Court refused to give this instruction, upon the express ground that he had so charged befcre. So the jury received that as the law, and of course were bound to render their verdict for defendants, as it was not pretended that Jordan had been returned, or offered to be. We think the Court had not so charged before, but the jury did not of course hesitate to act upon his Honor’s construction of what he had laid down to be the law. There is no other way to account for the verdict, for surely a ease had never been more fully made out. It was easy, from the evidence, to ascertain what had been given for the woman, as there was proof as to the value of the boy, as well as the woman, at the time of the sale.
There is no fraud imputed as to the boy, he having been bought and retained as sound; but the complaint is alone as to the mother. For the fraud in relation to her alone, the suit was brought, and the Court had correctly held, that if the proof was such as to enable *251 the jury to ascertain what was the price given for her; the plaintiffs were entitled to a verdict for that, with interest. But then, when he afterwards said that could not he done, unless he had offered to return the boy, that ended the case. This was not one of the hind of cases where severance cannot be made of the property purchased.
We think this error was fatal to the plaintiff, and for it reverse the judgment.